UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

RANVIR YADAV, VEENA YADAV,            :
PRIYANKA YADAV, SIDHARTH YADAV,
SURINDER AHLUWALIA and DEEPAK SETH :

                                      :

                  Plaintiffs,
                                      :    11 Civ. 1500 (HBP)
     -against-
                                      :    OPINION
RAJEEV a/k/a "Roger" PUNJ                  AND ORDER
                                      :

                  Defendant.          :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction


          Ranvir Yadav, Veena Yadav, Priyanka Yadav, Surinder

Ahluwalia and Deepak Seth commenced this action against Rajeev

a/k/a "Roger" Punj.  The Amended Complaint (Docket Item 48)

alleges claims for (1) violation of the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. § 1962(c), (2) violation of

Section 10(b) of the Securities Exchange Act and Rule 10b-5, 15

U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, (3) conversion, (4)

unjust enrichment, (5) breach of contract, (6) attempting to

defraud clients in violation of the Commodities Exchange Act, 7

U.S.C. § 6b(a)(2)(A-B), (7) failing to make certain reports and

maintain certain records in violation of the Commodities Exchange Act, 7 U.S.C § 6g, and (8) failing to segregate and separately account for customer funds in violation of the Commodities Futures Trading Commission's Rule 20, 17 C.F.R. § 1.20 (2013).

By notice of motion dated February 15, 2013 (Docket Item 66), plaintiffs moved for summary judgment with respect to their claims for fraud in violation of the Securities Exchange Act and Rule 10b-5, conversion, breach of contract and unjust enrichment.  For the reasons set forth below, plaintiffs' motion is granted in its entirety.

II.  Facts

Defendant maintained long-standing relationships with the plaintiffs, based on a common heritage and religion, and family ties (Affirmation of Adam J. Gana, dated Feb. 15, 2013 (Docket Item 67) ("Gana Aff.") Ex. D at ¶¶ 5-6; Ex. E at ¶¶ 5-6, Ex. F at ¶¶ 5-6, Ex. G at ¶¶ 5-6, Ex. H at ¶¶ 5-7).  Defendant represented to plaintiffs that he was a registered commodities broker with the National Futures Association ("NFA") and that he worked at an unidentified Commodity Exchange (Gana Aff., Ex. D at ¶¶ 7-8, Ex. E at ¶¶ 7-8, Ex. F at ¶¶ 7-8, Ex. G at ¶¶ 7-8, Ex. H at ¶¶ 8-9).  Defendant identified his trading firm as "K & M Commodities" and "Kap Trading," or colloquially as "Kaplan's

2

investment firm," and provided plaintiffs with "Kap trading" business cards (Gana Aff., Ex. D at ¶ 9, Ex. E at ¶ 9, Ex. F at ¶ 9, Ex. G at ¶ 9, Ex. H at ¶ 10).  Defendant also appears to have claimed that he had a professional relationship with two trading firms identified as SMW Trading and FC Stone (<u>see</u> Gana Aff., Ex. D at ¶¶ 13-14, Ex. E at ¶¶ 13-14).  Defendant further represented to plaintiffs that he could only make investments for them in his own name and directed plaintiffs to make checks payable directly to him or to provide him with cash (Gana Aff., Ex. D at ¶ 12, Ex. E at ¶ 12, Ex. F at ¶ 12, Ex. G at ¶ 12, Ex. H at ¶ 13).

A.   <u>Investments by Ranvir and Veena Yadav</u>

Plaintiffs Ranvir and Veena Yadav ("RVY") provided defendants with $25,000 on November 18, 2005 to open an account with SMW Trading for the purchase of United States Treasury Bills (Gana Aff., Ex. D at ¶ 13, Ex. E at ¶ 13, Ex. N at pg. 4).  On April 12, 2006, RVY provided defendant with an additional $100,000 to invest in an account at FC Stone (Gana Aff., Ex. D at ¶ 15, Ex. E at ¶ 15, Ex. N at pg. 5-8).  After defendant told RVY that there was a "margin balance" at FC Stone, plaintiffs gave defendant an additional $32,000 to deposit into the account on April 28, 2006 (Gana Aff., Ex. D at ¶ 16).  However, at the end of that month, defendant provided RVY with an account statement

showing that defendant deposited $132,000 and had lost $131,838 (Gana Aff., Ex. D at ¶ 17, Ex. Q at pg. 1).

Separately, defendant solicited RVY to invest through "K & M Commodities," "Kap Trading" or "Kaplan's investment firm" ("KAP") from RVY (Gana Aff, Ex. D at ¶ 22).  On April 19, 2006, RVY provided defendant with a $25,000 check for this investment, and, from December 2006 through December 2007, they supplemented that investment with ten additional checks totaling $381,000 and $35,000 in cash (Gana Aff., Ex. D at ¶ 29, Ex. E at ¶ 26, Ex. N at 9, 11-20).  In February and March of 2008, RVY provided defendant with an additional $200,000 for the account (Gana Aff., Ex. D at ¶ 27, Ex. N at pg. 21, 24-29).  At the point when RVY had invested $250,000 in the scheme, defendant provided a "purported account statement" that claimed that this investment had grown to $950,000 (Gana Aff., Ex. D at ¶ 25, Ex. E at ¶ 22). However, defendant's bank statements demonstrate that defendant deposited all of RVY's checks directly into his personal bank account and never invested anything on behalf of RVY (Gana Aff., Ex. T).

Defendant also entered into a contract with Ranvir Yadav on October 7, 2006 under which Yadav agreed to lend defendant $50,000 in return for 35 monthly payments of $1,000 and

4

a lump sum payment of $50,000 at the end of the 35-month period
(Gana Aff., Ex. D at ¶¶ 19-21, Ex. M).

In total, defendant repaid $93,000 to RVY between April
2006 and March 2008 out of the $848,000 that was either lent to
or invested through defendant (Gana Aff., Ex. D at ¶ 31, Ex. E at
¶ 28, Ex. O at pg. 8-13).

B.   Investments by Priyanka Yadav

Defendant also solicited funds from Priyanka Yadav
("PY") for KAP, and, between December 1, 2005 and February 7,
2008, PY provided defendant with three checks totaling $100,000
to invest on PY's behalf (Gana Aff., Ex. F at ¶¶ 14-15, Ex. N at
pg. 11, 23).  However, defendant's bank statements shows that
these checks were also deposited directly into defendant's per-
sonal bank account and were never invested.  Defendant repaid
only $54,500 of the $100,000 (Gana Aff., Ex. F at ¶ 18; Ex. O at
pg. 22-29).

C.   Investments by Sidharth Yadav

Plaintiff Sidharth Yadav ("SY") similarly invested in
KAP as a result of defendant's solicitation.  In 2006 and 2007,
SY provided defendant with checks totaling $50,000, all of which
were deposited directly into defendant's personal bank account;

none of the funds were invested on SY's behalf (Gana Aff., Ex. G at ¶¶ 13-14, Ex. U).  SY claims that defendant only repaid $13,000 of these funds (Gana Aff., Ex. G at ¶¶ 15-16).  However, the checks submitted by plaintiffs in connection with this motion show that defendant actually paid SY $17,000 between May 2006 and April 2008 (Gana Aff., Ex. O at pg. 14-21).

   D.   Investments by Surinder Ahluwalia

        Defendant also solicited funds from plaintiff Surinder Ahluwalia ("SA") to invest in KAP.  In 2006, SA provided four checks of $25,000 each to defendant, and, in 2007, SA provided two further investments of $50,000 each to be invested in gold stock (Gana Aff., Ex. N at pg. 1-3).  All of these checks were deposited directly into defendant's personal bank account; defendant has repaid only $102,500 (Gana Aff., Ex. O at pg. 1-7).

   E.   Investments by Deepak Seth

        Defendant also solicited funds from plaintiff Deepak Seth ("DS") to invest in KAP.  On July 23, 2008, DS provided defendant with a check for $12,500 and $10,000 in cash to invest on his behalf (Gana Aff., Ex. H at ¶¶ 14-15, Ex. N at pg. 30), but these funds were deposited directly in defendant's bank

6

account.  Defendant has only repaid $7,000 of these funds (Gana
Aff., Ex. H at ¶ 16).

     F.  <u>Summary of Investments</u>

       In total, defendant solicited $1,170,250.00 from
plaintiffs to invest in KAP and for other investments.  According
to plaintiffs, defendant has returned a total of only $274,000 to
them and has not explained what happened to the balance.  At his
deposition, defendant asserted his Fifth Amendment privilege
against self-incrimination with respect to all questions other
than his name and address.  Defendant further stipulated that
"the judge may take whatever inferences, negative inferences,
that he may take as a matter of law" with respect to both the
intended questions and the exhibits prepared by plaintiffs (Gana
Aff., Ex. C at pg. 23-25).

III.  <u>Analysis</u>

     A.  Standards Applicable to a
         <u>Motion for Summary Judgment</u>

       The standards applicable to a motion for summary judg-
ment are well-settled and require only brief review.

           Summary judgment may be granted only where there
        is no genuine issue as to any material fact and the
        moving party . . . is entitled to a judgment as a
        matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a

motion for summary judgment, a court must resolve all
ambiguities and draw all factual inferences in favor of
the nonmoving party.  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202
(1986).  To grant the motion, the court must determine
that there is no genuine issue of material fact to be
tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23,
106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine
factual issue derives from the "evidence [being] such
that a reasonable jury could return a verdict for the
nonmoving party."  Anderson, 477 U.S. at 248, 106 S.Ct.
2505.  The nonmoving party cannot defeat summary
judgment by "simply show[ing] that there is some
metaphysical doubt as to the material facts,"
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986),
or by a factual argument based on "conjecture or
surmise," Bryant v. Maffucci, 923 F.2d 979, 982 (2d
Cir. 1991).  The Supreme Court teaches that "all that
is required [from a nonmoving party] is that sufficient
evidence supporting the claimed factual dispute be
shown to require a jury or judge to resolve the
parties' differing versions of the truth at trial."
First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S.
253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); see
also Hunt v. Cromartie, 526 U.S. 541, 552, 119 S.Ct.
1545, 143 L.Ed.2d 731 (1999).  It is a settled rule
that "[c]redibility assessments, choices between
conflicting versions of the events, and the weighing of
evidence are matters for the jury, not for the court on
a motion for summary judgment."  Fischl v. Armitage,
128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill

v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City

of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l

Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

        "Material facts are those which 'might affect the out-

come of the suit under the governing law,' and a dispute is

'genuine' if 'the evidence is such that a reasonable jury could

8

return a verdict for the nonmoving party.'"  Coppola v. Bear
Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir.
2007).  "'[I]n ruling on a motion for summary judgment, a judge
must ask himself not whether he thinks the evidence unmistakably
favors one side or the other but whether a fair-minded jury could
return a verdict for the [non-movant] on the evidence pre-
sented[.]'"  Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778,
788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank,
81 F.3d 295, 298 (2d Cir. 1996).

        Local Rule 56.1(a) requires that a party moving for
summary judgment submit a "separate, short and concise statement,
in numbered paragraphs, of the material facts as to which the
moving party contends there is no genuine issue to be tried."
Defendant's "failure to comply with Local Rule 56.1 is [a suf-
ficient ground] for deeming admitted the facts contained in
[plaintiffs'] Rule 56.1 statement" and granting plaintiffs'
motion.  Taylor v. Local 32E Serv. Employees Int'l, Union, 286 F.
Supp. 2d 246, 248 n.1 (S.D.N.Y. 2003) (Conner, D.J.), aff'd, 118
F. App'x 526 (2d Cir. 2004); Watt v. N.Y. Botanical Garden, 98
Civ. 1095 (BSJ), 2000 WL 193626 at *1 n.1 (S.D.N.Y. Feb. 16,
2000) (Jones, D.J.).  "A district court[, however,] has broad

9

discretion to determine whether to overlook a party's failure to comply with local court rules," and, thus, "may . . . opt to conduct an assiduous review of the record" even when a party has not complied with Rule 56.1.  Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted).

The Court of Appeals for the Second Circuit has further explained that "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion."  Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001) ("The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.").  Finally, even when a summary judgment motion is unopposed, the Court must examine the record to determine whether a genuine issue of fact exists for trial; a summary judgment

10

motion cannot be granted on default. <u>Vt. Teddy Bear Co. V. 1-800 Beargram Co.</u>, <u>supra</u>, 373 F.3d at 244.

Given the strong preference in this Circuit for resolving cases on the merits, <u>see</u>, <u>e.g.</u>, <u>Jamison v. Fischer</u>, 11 Civ. 4697 (RJS), 2012 WL 4767173 at *6 (S.D.N.Y. Sept. 27, 2012) (Sullivan, D.J.), I shall overlook the lack of a Rule 56.1 statement by defendant and review the record independently. <u>See Am. Med. Ass'n v. United HealthCare Corp.</u>, 00 Civ. 2800 (LMM), 2007 WL 1771498 at *3 (S.D.N.Y. June 18, 2007) (McKenna, D.J.) (conducting review of the record "to fill . . . gaps" resulting from plaintiffs' failure to file a 56.1 counter-statement in response to defendants' 56.1 statement); <u>Citibank N.A. v. Outdoor Resorts of Am., Inc.</u>, 91 Civ. 1407 (MBM), 1992 WL 162926 at *4 (S.D.N.Y. June 29, 1992) (Mukasey, D.J.) (declining to grant summary judgment based on non-moving party's failure to submit a Rule 56.1 statement).

At his deposition, defendant asserted his Fifth Amendment privilege against self-incrimination with respect to all questions other than his name and address (Gana Aff., Ex. C at pg. 23-25). While a fact finder cannot draw an adverse inference in a criminal case when a party asserts the privilege against self incrimination, the Fifth Amendment "'does not forbid adverse inferences against parties to civil actions when they

11

refuse to testify in response to probative evidence offered
against them.'"  Libutti v. United States, 107 F.3d 100, 121 (2d
Cir. 1997), quoting Baxter v. Palmigiano, 425 U.S. 308, 318
(1976).  A "party who asserts the privilege against self-
incrimination must bear the consequence of lack of evidence," and
"[t]he claim of privilege will not prevent an adverse finding or
even summary judgment if the litigant does not present sufficient
evidence to satisfy the usual evidentiary burdens in the
litigation."  United States v. Certain Real Property & Premises
Known as 4003-4005 5th Ave., 55 F.3d 78, 82-83 (2d Cir. 1995).
In addition, as noted above, defendant conceded during his
deposition that "the judge may take whatever inferences, negative
inferences, that he may take as a matter of law" with respect to
both the intended questions and the exhibits prepared by
plaintiffs (Gana Aff., Ex. C at pg. 23).

      Accordingly, my decision to overlook defendant's
failure to file a Rule 56.1 statement does not change the
outcome.  For the reasons set forth below and because the facts
asserted by the plaintiffs are controverted only by the
defendant's conclusory denial of all charges as "false
accusations," (Affirmation of Rajeev Punj in Opposition to Motion
for Summary Judgement, dated Mar. 1, 2013 (Docket Item 71)), I
conclude that plaintiffs' summary judgment motion should be

granted on the merits.  See Local Union No. 38 v. Hollywood
Heating & Cooling, Inc., 88 F. Supp. 2d 246, 247 n.1 (S.D.N.Y.
2000) (McMahon, D.J.) (declining to deem movant's Rule 56.1
statement admitted where non-moving party submitted its Rule 56.1
statement nearly two months late because movant was entitled to
summary judgment on the merits).

   B.  Plaintiffs' Arguments

        To prevail on a securities fraud claim pursuant to
Section 10(b) of the Securities Exchange Act and Rule 10b-5, a
plaintiff must prove: (1) a material misrepresentation or
omission, (2) scienter, (3) reliance upon the misrepresentation
or omission, (4) economic loss and (5) causation.  15 U.S.C. §
78j(b); 17 C.F.R. § 240.10b-5; see, e.g., Kleinman v. Elan Corp.,
706 F.3d 145, 152 (2d Cir. 2013).  Defendant made material
misrepresentations when he claimed "that he was a licensed
commodities broker with the National Futures Association" and
identified numerous trading firms at which he claimed to work
(Gana Aff., Ex. D at ¶¶ 7-9).  Defendant made the further
misrepresentation that he would invest in particular accounts and
types of investments in plaintiffs' names even though he
proceeded to deposit the funds in his personal account instead.
Furthermore, defendant provided RVY with a false account

13

statement claiming that an initial investment of $250,000 had grown to $950,000, which constituted an additional material representation (Gana Aff., Ex. D at ¶ 25, Ex. E at ¶ 22).

"[P]laintiffs must . . . state with particularity facts giving rise to a strong inference that the defendant acted with" scienter. Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000) (internal quotations and citations omitted). This can be accomplished "where the complaint sufficiently alleges that the defendants . . . benefitted in a concrete and personal way from the purported fraud." Novak v. Kasaks, supra, 216 F.3d at 311. In this case, plaintiffs chronicled the specific manner in which defendant received funds from plaintiffs and deposited them directly into his personal banking account. Thus, defendant personally benefitted in a concrete way from the purported fraud, which fulfills the element of scienter.

Plaintiffs relied upon the aforementioned misrepresentations in choosing to invest with defendant, and plaintiffs' economic loss of $846,250 was caused by defendant returning only $274,000 of the $1,120,250 in investments, thus fulfilling the final three elements for a securities fraud claim. Consequently, no reasonable jury could find for the defendant with respect to this claim, and summary judgment is awarded for the amount of $846,250.

The two elements required for common-law conversion are (1) "plaintiff's possessory right or interest in the property" and (2) "defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." <u>Colavito v. New York Organ Donor Network, Inc.</u>, 8 N.Y.3d 43, 50, 860 N.E.2d 713, 717, 827 N.Y.S.2d 96, 100 (2006). <u>See</u> <u>also</u> <u>Lynch v. City of New York</u>, __ A.D.3d __, __, 965 N.Y.S.2d 441, 446 (1st Dep't 2013).

In total, defendant induced plaintiffs to invest $1,120,250.00 in KAP and other purported investments,[1] but he returned only $274,000 to plaintiffs.[2]  The funds plaintiffs invested with defendant were transferred to him for the limited purpose of being invested for plaintiffs' benefit, yet defendant deposited the funds in his personal bank accounts.  Plaintiffs allege that defendant has refused to repay the majority of the funds, and, because defendant refused to testify regarding these allegations, the record establishes that defendant interfered

---

[1]The total investment of $1,120,250 is comprised of:  (1) $748,000 invested by RVY through SMW Trading, FC Stone, and KAP, (2) $100,000 invested by PY in KAP, (3) $50,000 invested by SY in KAP, (4) $200,000 invested by SA in KAP, and (5) $22,250 invested by DS in KAP.  I address the funds that were loaned to defendant but not returned in connection with the breach-of-contract claim.

[2]While SY claims that defendant only repaid $13,000 from his investment, the documentary evidence provided in connection with plaintiffs' motion indicates that $17,000 was repaid (Gana Aff., Ex. O).  Accordingly, I have calculated the total based upon this latter figure due to the heightened reliability of physical evidence.

with plaintiffs' possessory right for his own personal use. Consequently, plaintiffs motion for summary judgment is granted with respect to the conversion claim in the amount of $846,250 ($1,120,250 minus $274,000 equals $846,250).

"The elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of the contract, and resulting damages." Kausal v. Educ. Prod. Info. Exch. Inst., 105 A.D.3d 909, 910, 964 N.Y.S.2d 550, 552 (2d Dep't 2013).  Defendant entered into a contract with plaintiff Ranvir Yadav on October 7, 2006 pursuant to which Yadav lent $50,000 to defendant, and defendant agreed to remit monthly dividends of $1,000 with full repayment of the principal 35 months later on September 15, 2009 (Gana Aff., Ex. D at ¶ 19, Ex. M).  Yadav fully performed his obligations by delivering $50,000 to defendant (Gana Aff., Ex. N at pg. 10), and defendant materially breached the contract by failing to make any of the required payments.  Accordingly, summary judgment is awarded for the full amount of the contract principle, $50,000.[3]

Plaintiffs also moved for summary judgment with respect to the alternative claim of unjust enrichment.  To prevail on a

---

[3]Plaintiffs do not address their remaining claims in their memorandum of law in support of their motion for summary judgment.  Accordingly, I deem those claims abandoned.

claim of unjust enrichment, "a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Green v. Beer, 06 Civ. 4156 (KMW), 2007 WL 576089 at *2 (S.D.N.Y. Feb. 22, 2007) (Wood, D.J.) (internal quotations and citations omitted); see also Cruz v. McAneney, 31 A.D.3d 54, 59, 816 N.Y.S.2d 486, 490-91 (2d Dep't 2006). All the funds transferred to defendant were deposited in his personal bank account at the expense of plaintiffs, thus establishing the first two elements of the offense. See Green v. Beer, supra, 2007 WL 576089 at *2. Furthermore, it is unquestionably "against equity and good conscience" to allow defendant to retain these funds because he obtained the funds by misleading plaintiffs into believing that the funds would be invested on their behalf. In truth, the funds were simply misappropriated by defendant, and plaintiffs received nothing in return. Accordingly, summary judgment is also warranted on the claim of unjust enrichment for the full amount remaining unpaid, $896,250.[4]

---

[4]This total reflects the sum of all payments made by plaintiffs ($1,170,250) less the total of the funds repaid to plaintiffs ($274,000).

C.   <u>Prejudgment Interest</u>

Under New York law, prejudgment interest is recoverable in connection with both conversion and breach of contract claims. <u>See</u> <u>Briarpatch Ltd. v. Geisler Roberdeau, Inc.</u>, 513 F. Supp. 2d 1, 5 (S.D.N.Y. 2007) (Sweet, D.J.) ("New York law provides for the awarding of both prejudgment and postjudgment interest at the statutory rate of nine percent per annum in the context of . . . conversion claims."); <u>Lee v. Joseph E. Seagram & Sons, Inc.</u>, 592 F.2d 39, 41 (2d Cir. 1979) ("Under the law of New York pre-judgment interest is recoverable as a matter of right in an action at law for breach of contract."). This "[i]nterest is to be computed 'from the earliest ascertainable date the cause of action existed,' or, where damages were incurred at various times, interest is to be computed 'upon each item from the date it was incurred or upon all damages from a single reasonable intermediate date.'" <u>Grace v. Corbis Sygma</u>, 535 F. Supp. 2d 392, 402 (S.D.N.Y. 2008) (Chin, D.J.) (quoting N.Y. C.P.L.R. § 5001(b)). Accordingly, plaintiffs are entitled to an award of prejudgment interest with respect to the conversion claims and the breach of contract claim, and, due to the wide range of dates from 2005 to 2008 on which plaintiffs transferred funds to defendant, I elect to calculate damages from a reasonable intermediate date. Based on a weighted average of the dates from

18

plaintiffs' checks, I have chosen December 30, 2006 as the appropriate date from which interest should be calculated.[5]  When the statutory rate of nine percent per annum is applied to the full $896,250 damages from that date, plaintiffs are awarded $564,637.50 for prejudgment interest for the seven years until December 30, 2012, and an additional $48,397.50 for the .6 years to present,[6] which brings the total award to $1,509,285.

IV.  Conclusion

Accordingly, for all of the foregoing reasons, the plaintiffs' motion for summary judgment is granted in full.  The Clerk of Court is directed to enter judgment in favor of plaintiffs in the amount of $1,509,285.

Dated:  New York, New York
        August 5, 2013

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

---

[5]On that date, RVY transferred the largest individual sum to defendant when compared to all other payments, and this payment caused the total amount paid to date to reach approximately half of the total amount in question in the case.

[6]219 days, or exactly 60% of a year, passed between December 30, 2012 and August 5, 2013, the date of this decision.

19

Copies Transmitted To:

Adam J. Gana
Napoli Bern Ripka Shkolnik, LLP
350 Fifth Avenue
Suite 7413
New York, NY 10118

Rajeev Punj
431 Commack Road
Islip, NY 11751